GARMAN TURNER GORDON LLP
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
E-mail: tgray@gtg.legal
TERESA M. PILATOWICZ, ESQ.
Nevada Bar No. 9605
E-mail: tpilatowicz@gtg.legal
650 White Drive, Ste. 100
Las Vegas, Nevada 89119
Telephone (725) 777-3000
Facsimile (725) 777-3112
*Attorneys for DatabaseUSA.com LLC*

DVORAK LAW GROUP, LLC
PATRICK R. TURNER (SBN 23461)
(*Appearing Pro Hac Vice*)
E-Mail: pturner@ddlawgroup.com
13625 California Street, Ste. 110
Omaha, Nebraska 68102
Telephone: 402.933-9597
*Attorneys for DatabaseUSA.com LLC*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>DATABASEUSA.COM LLC,<br><br>        Debtor. | Case No.: BK-S-19-10001-BTB<br><br>Chapter 11 |

**STIPULATION REGARDING DEBTOR'S USE OF CASH COLLATERAL *NUNC PRO TUNC* TO THE PETITION DATE**

DatabaseUSA.com, LLC, debtor and debtor-in-possession in the above-captioned Chapter 11 Bankruptcy case ("Debtor"), and Everest Group, LLC ("Everest" or the "Lender") hereby stipulate to Debtor's use of cash collateral as follows:

**I. JURISDICTION AND VENUE**

1. On January 2, 2019 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"), commencing the above-captioned Chapter 11 Case.

2. Debtor remains in possession of its assets and continues to operate as debtor-in-possession in accordance with 11 U.S.C. §§ 1107 and 1108. No Official Committee of Unsecured Creditors has been appointed in this case. This is a core proceeding pursuant to 28 U.S.C. § 157(2)(A). This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334. Venue is proper pursuant to 28 U.S.C. §1408.

## II. DEBTOR'S BUSINESS AND PRE-PETITION LOANS

3.  Debtor is a leading provider of full-service database and e-mail marketing solutions providing detailed information on over 15 million businesses and over 245 million consumers. In sum, Debtor provides mailing lists, sales leads, email services, data analytics, and enhancements.

4.  Vinod Gupta holds an approximately 90% ownership in Debtor through Everest, Gupta's family office and investment corporation.

5.  Debtor's business ultimately operates by selling compilations and lists of data. Debtor's business activity includes data aggregation, data processing, and development of lists in reference to information for business use and sales. Debtor sells organized, aggregated, and appropriately presented readily available public and other information assembled in lists or presentations suitable for commercial uses by its customers. It sells these lists of data to public purchasers in a highly competitive market for such sales activity and for leads for business purposes. Debtor offers a 95% accurate, triple-verified database of mailing lists, email lists, and sales leads, as well as direct mail, database enhancements, and many other marketing and sales lead services.

6.  Because Debtor must initially invest significant funds to buy data from several vendors, obtain the rights to reformat, reconfigure for receptivity to search queries and user access, and use its proprietary models to make unique lists using this data, its profitability takes time to achieve. Nonetheless, Debtor's gross revenue reached over $1.6 million in its first year and, since that time, has grown an average of 44% per year to $8,153,000 by 2016. While revenue has slowed over past years, Debtor's annual revenue has continued to increase in recent years, reaching over $9.25 million in 2018. Debtor anticipates significant growth into the future.

7. As a result of the nature of Debtor's business and the inherently delayed profitability of such businesses, and exacerbated by the significant legal fees for litigation addressed below, Debtor has borrowed funds from the Lender to support its ongoing operations.

8. Debtor's initial secured loan came from Everest in the form of a revolving credit line as evidenced by an *Demand Revolving Promissory Note and Security Agreement* (as subsequently amended, the "Initial Note") dated October 27, 2009. That note was subsequently amended and restated on two separate occasions, the most recent of which was on June 4, 2012.

9. Pursuant to the terms of the Initial Note, any outstanding amount of principal accrues interest at ten percent (10%) per annum, due annually, with the principal and any outstanding interest due and payable upon 60 days written demand.

10. In connection with the Initial Note, Debtor granted Everest a security interest in substantially all of Debtor's assets. Debtor also granted Everest a security interest substantially all of its assets in connection with an "Affiliates Guaranty and Security Agreement" dated April 13, 2013, and the First Amendment to that agreement.

11. On April 22, 2013, an initial UCC-1 Financing Statement was filed with the Nevada Secretary of State, naming Everest as secured party and Debtor as Debtor. A continuation statement was filed February 6, 2018.

12. In January 2017, Debtor executed a new *Demand Revolving Promissory Note and Security Agreement*, increasing the total credit line to $30 million (as amended, the "Everest Note").

13. The Everest Note was subsequently amended on February 1, 2017 through the *First Amendment to the Demand Revolving Promissory Note and Security Agreement* (the "Everest Amendment," and together with all of the prior and related notes, loan documents, and

Garman Turner Gordon LLP
650 White Drive, Ste. 100
Las Vegas, Nevada 89119
(725) 777-3000

security instruments, the "Loan Documents"), to clarify the scope of Everest's collateral securing the Everest Note.

14. Pursuant to the terms of the Everest Note, the amount of interest was reduced from ten percent (10%) to five percent (5%) per annum, due annually, with the principal and any outstanding interest due and payable upon 60 days written demand.

15. As with the Initial Note, and as evidenced by both a continuation UCC-1 Financing Statement and a new UCC-1 Financing Statement filed with the Nevada Secretary of State on February 6, 2018, Everest continues to hold a lien in substantially all of Debtor's assets.

### III. STIPULATION

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Lender and Debtor, intending to be legally bound, stipulate as follows:

A. As of the Petition Date, Lender contends that Debtor was indebted to Lender in the amount of $34,439,363.85 pursuant to the Everest Note, which is comprised of principal of $22,116,045.80 (the "Principal Indebtedness") and interest and fees of $12,323,318.05 (the "Interest Indebtedness," and together with the Principal Indebtedness, the "Pre-Prepetition Indebtedness").

B. To secure the Pre-Prepetition Indebtedness and pursuant to the terms of the Loan Documents, Debtor granted Lender a security interest in all of Debtor's assets (collectively, the "Pre-Petition Collateral") including, but not limited to, inventory, equipment, general intangibles, accounts, chattel paper, contract rights and other rights to payment together with all proceeds of the foregoing (collectively, the "Pre-Petition Liens").

      C.     Debtor acknowledges Lender has validly perfected its first priority security interest with respect to the Pre-Petition Collateral by filing proper financing statements with the Nevada Secretary of State and other appropriate recording offices.

      D.     Debtor acknowledges the Principal Indebtedness of $22,116,045.80 is absolutely and unconditionally due and payable, and Lender has a valid existing claim for the full amount thereof. Debtor has requested accounting from Lender with respect to the Interest Indebtedness and Debtor reserves its right to object, if appropriate, to the Interest Indebtedness.

      E.     Debtor acknowledges the Loan Documents are valid and enforceable in accordance with their respective terms, are not subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever, and are not subject to avoidance pursuant to applicable state or federal laws (including, without limitation, the Bankruptcy Code). Except with respect to the Interest Indebtedness, Debtor waives any right to raise any defense, offset, or counterclaim with respect to the Pre-Petition Indebtedness.

      F.     Debtor acknowledges that any and all cash received from: (i) the sale or collection of any of its pre-petition assets or post-petition assets in which Lender is granted a replacement lien; or (ii) the collection of any pre-petition receivables or post-petition receivables in which Lender is granted a replacement lien, constitutes the cash collateral of the Lender (the "<u>Cash Collateral</u>"). Lender agrees that Debtor may use the Cash Collateral to pay ordinary and necessary business and administrative expenses in accordance with the Budget attached hereto as **Exhibit 1** and incorporated herein by this reference (the "<u>Budget</u>"), subject to:

    i. termination of this Agreement;

    ii.    the rights of Lender upon the occurrence of an event of default to terminate this Agreement; or

    iii.   the rights of Lender otherwise available to the Lender under the Bankruptcy Code. Debtor agrees that it will not, without the prior written consent of Lender,

Garman Turner Gordon LLP
650 White Drive, Ste. 100
Las Vegas, Nevada 89119
(725) 777-3000

engage in the use of the Cash Collateral of the Lender other than to pay ordinary and necessary business and administrative expenses as set forth in the Budget.

G.    For purposes of Debtor's use of Cash Collateral in compliance with the Budget, the parties agree that the individual types of expenses are estimates but total disbursements shall not exceed the gross amount of the budgeted monthly expenses by more than ten percent (10%) without Lender's approval.  Any changes to the Budget shall be by agreement of Debtor and the Lender.  Debtor shall provide a subsequent Budget for Lender's approval two weeks prior to the termination of the then-current budget.  Lender shall have one week after receipt of each subsequent budget to file an objection to the subsequent budget.  If an objection is not timely filed by Lender, the subsequent budget shall be deemed approved and final, and Debtor shall be authorized to use Cash Collateral in accordance with that Budget subject to the terms of this Stipulation.

H.    The following constitutes adequate protection for Debtor's use of Cash Collateral and any diminution in value resulting from Debtor's use of Cash Collateral:

  i.    Notwithstanding 11 U.S.C. § 552, Lender's liens and security interests in the Pre-Petition Collateral shall attach to all of Debtor's post-petition assets of the same kind and to the same extent the liens were effective or valid with respect to the Pre-Petition Collateral, including without limitation, whether now owned or hereafter acquired, inventory, equipment, general intangibles, accounts, chattel papers, contract rights and other right to payment, including all substitutions and replacements of the foregoing and the proceeds thereof (the "Post-Petition Collateral" and collectively with the Pre-Petition Collateral, the "Lender's Collateral");

  ii.   The Loan Documents will remain in full force and effect;

  iii.  The rights and obligations of Debtor and the rights, claims, security interests, liens and priorities of Lender arising under this Stipulation are in addition to, and not in lieu or substitution of, the rights, obligations, claims, security interests, liens and priorities granted under the applicable Loan Documents;

  iv.   All the liens and security interests of Lender created pursuant to this Stipulation shall be deemed effective, valid and perfected to the commencement date of the Bankruptcy proceedings (January 2, 2019), without the necessity of filing or recording by or with any entity of any documents or instruments otherwise

required to be filed or recorded under applicable non-Bankruptcy law. This Stipulation shall be deemed to be a security agreement for purposes of creation, attachment and perfection of Lender's liens granted herein;

 v. The Debtor shall comply with all reporting requirements under the Loan Documents and shall furnish to Lender such additional information respecting the financial condition and results of the operation of the Debtor as Lender may from time to time reasonably request; and

 vi. Lender and its agents shall have the right to inspect the books and records of Debtor and to inspect and appraise the Lender's Collateral during regular business hours and at such other times as are mutually convenient.

I. The following shall constitute an "event of default" under this Stipulation.

 i. failure to abide by any other term or condition of this Stipulation, including non-performance of any obligation imposed by this Stipulation or the Order approving it;

 ii. failure to abide by or breach of any of the terms of the Loan Documents other than with respect to covenants and obligations with respect to solvency and pre-petition defaults;

 iii. failure to stay within 10% of the gross amount of the Budget as required herein;

 iv. termination of the automatic stay by any other party permitting that party to proceed against a material portion of the Lender's Collateral;

 v. entry of an Order converting this Chapter 11 Case to one under Chapter 7;

 vi. entry of an Order appointing a trustee under 11 U.S.C. 1104; and

 vii. entry of an Order dismissing this case.

J. Upon any event of default, and after the expiration of the longer of: (i) any cure period allowed under the Loan Documents; (ii) the expiration of any applicable appeal period related to a final or interlocutory order entered by the Bankruptcy Court in this case that will constitute an event of default; or (iii) fourteen (14) days after Lender has filed a declaration in the Chapter 11 Case specifying the event of default that has occurred and has not been timely cured (the "Default Notice"), Lender shall be entitled to entry of an order granting it relief from any stay to enforce all rights and remedies available by law or in equity under the Loan Documents and this Stipulation without further notice or hearing; provided, however, that Debtor

may challenge the asserted default in the Default Notice, which dispute shall be set for hearing within five business' days of Debtor filing a motion seeking to adjudicate the disputed default.

K. Debtor's ability to use Cash Collateral pursuant to this Stipulation shall terminate upon the earlier of an event of default as provided for above, or in any event, automatically, on June 30, 2019, unless agreed to be extended by Lender in writing; provided, however, Lender's security interests in and to the Lender's Collateral shall survive and remain in full force and effect notwithstanding termination of this Stipulation for purposes of Debtor's ability to use Cash Collateral.

L. Except as otherwise expressly set forth herein, Lender reserves and retains all rights it may have as to the Pre-Prepetition Indebtedness and against the Lender's collateral. Lender reserves its right to seek relief from the automatic stay, to seek dismissal or conversion of the case, and to take such other steps as Lender may deem appropriate.

M. Except as otherwise expressly set forth herein, Lender reserves and retains all rights it may have as to the Pre-Petition Indebtedness, Pre-Petition Collateral, and Post-Petition Collateral.

N. This Stipulation is binding upon the parties and their respective successors and assigns, including any successor trustee or success under any plan of reorganization.

O. This Stipulation is subject to and shall be effective only upon, entry of an Order by the Bankruptcy Court.

P. This Stipulation may be executed and delivered in counterparts, including by a facsimile transmission thereof, each of which shall be binding upon the party who has signed the counterpart and when taken together, shall constitute an original fully executed and binding agreement between the parties.

Q. This Stipulation sets forth the complete agreement of the parties and may not be modified, waived or changed, except by a writing signed by the parties to be bound thereby.

DATED this 19th day of February, 2019.

| GARMAN TURNER GORDON LLP | BAIRD HOLM LLP |
|---|---|
| By: */s/ Talitha Gray Kozlowski*<br>    TALITHA GRAY KOZLOWSKI, ESQ.<br>    TERESA M. PILATOWICZ, ESQ.<br>    650 White Drive, Suite 100<br>    Las Vegas, Nevada 89119 | By: */s/T. Randall Wright*<br>    T. RANDALL WRIGHT, ESQ.<br>    1700 Farnam Street, Suite 1500<br>    Omaha, Nebraska 68102<br>    *Attorneys for Everest Group, LLC* |

and

DVORAK LAW GROUP, LLC
    PATRICK R. TURNER, ESQ.
    13625 California Street, Ste. 110
    Omaha, Nebraska 68154
    *Attorneys for DatabaseUSA.com LLC*

4833-6262-8486, v. 2